

100 William Street, 6th Floor
New York, NY 10038
Tel 212-417-3700
Fax 212-417-3890
www.mobilizationforjustice.org

<u>**Via ECF**</u>

October 6, 2023

Catherine O'Hagan Wolfe, Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

     Re:   *Greater Chautauqua v. Quattrone,* No. 23-733 (2d Cir.)

Dear Ms. Wolfe,

     Pursuant to the Court's August 22, 2023 Minute Order, Appellants Western New York Law Center and Bartel Miller respectfully submit this supplemental letter-brief addressing the effect of the District Court's disposition of a motion by the Attorney General to modify the District Court's preliminary injunction (PI).

     For the reasons discussed below, as well as in Appellants' motion for injunctive relief pending appeal, the District Court's disposition of the modification motion moots the first part of Appellants' request for injunctive relief pending appeal—that the PI be limited to Appellees only. But it does not obviate the need for a ruling on the second part of Appellants' request—that this Court remedy the harm and confusion wrought by the District Court's inappropriate order for Appellees to distribute the PI to 59 non-party New York State Sheriffs.

**Background**

Appellants' May 5, 2023 motion to modify the PI pending appeal requested that this Court: (1) narrow the PI to limit its scope to Appellees only; and (2) remedy the harm created by the District Court's order that Appellees distribute the PI to all Sheriffs statewide, including 59 Sheriffs who, because they were non-parties, could not be lawfully bound by the PI.

One month later, on June 5, 2023, the Attorney General moved in the District Court to modify the PI but sought only that the PI be modified to be limited to Appellees only—the first prong of Appellants' two-part request to this Court.[1]  On September 15, 2023, the District Court granted the Attorney General's motion, accepting the contention that "since the litigation is now limited to [resolving] the constitutionality of the Act *as-applied* [to Appellees], the PI should be limited to the three named Plaintiffs [Appellees], and not to all consumer debt judgment holders statewide."  Ex. A (Sept. 15, 2023 District Court Order) at 8 (emphasis in original).  The District Court also noted "that despite styling the Complaint as a 'Class Action Complaint' and inserting rather conclusory class allegations, [Appellees] have done nothing in the more than a year since its filing to attempt to certify a purported class" and have failed to offer any evidentiary

---

[1] The Attorney General filed a pre-motion conference request regarding its intention to move to modify the PI on April 21, 2023.

showing that they even could certify a class. *Id.* at 10-11 & n.6. To date, Appellees have neither moved for reconsideration of the September 15, 2023 Opinion and Order nor sought an interlocutory appeal under 28 U.S.C. § 1292(a)(1).

Before filing this letter, Appellants made several efforts to try to resolve the remaining issue in their appeal without further expenditure of time or resources by the parties or this Court. First, on September 20, 2023, Appellants wrote a letter to the District Court, requesting that it order the distribution of the modified PI to all Sheriffs statewide—the same set of Sheriffs to whom the District Court ordered the original PI be distributed. Ex. B (Sept. 20, 2023 Endorsed Letter from Appellants). Appellants sought the positions of all the parties below on their request; Appellees stated that their only position was that Appellants lacked standing to make the request. *Id.* Later the same day, the District Court denied Appellants' request on standing grounds. *Id.*

Second, on September 27, 2023, Appellants contacted counsel for Appellees and requested that they enter into a stipulation, to be so-ordered by the District Court, in which Appellants would agree to distribute the modified PI to all non-party Sheriffs who received the distribution of the original PI, along with a cover letter explaining that: (a) the original PI was distributed to them by order of the District Court but did not bind them; (b) the PI has now been modified to apply to

only the three named Plaintiffs in the District Court matter, and, even for the three named Plaintiffs, only in Chautauqua, Erie, and Niagara Counties; and (c) even if it was unclear whether the original PI bound them, this modified PI does not bind them. Appellees responded to Appellants' email on September 29, 2023, and declined to enter into such a stipulation. Appellees further stated that Appellants lack standing to ask for such relief and that Appellants "did not ask the Second Circuit to direct us to serve the non-party sheriffs with any order narrowing the injunction, so the issue you identify is not an issue in the appeal."[2] Ex. C (Email exchange between Appellants and Appellees' counsel). Appellees also stated that Appellants "could simply serve the order on the other sheriffs, rather than continuing to pursue this relief," *id.*, inexplicably failing to recognize, despite all the briefing before the District Court and this Court, that it was the *Court-ordered* nature of the distribution of the original PI that caused the harm and confusion Appellants now seek to unwind.

## The Effect of the District Court Decision

The District Court's September 15, 2023 Opinion and Order moots the first issue raised in Appellants' motion—that the PI be limited to Appellees only. But it only bolsters Appellants' point that further modification of the PI is necessary to

---

[2] When Appellants filed their appeal, no such order narrowing the injunction existed, in fact no motion to modify the preliminary injunction had been filed.

remedy the harm caused by the improper distribution of the original PI to 59 non-party Sheriffs, an action that has resulted in reasonable fear of contempt should Sheriffs across the State comply with the Act (as the Legislature intended), and not with the PI.

This fear is not merely theoretical: in addition to the declarations of legal services attorneys who attested to instances of non-party enforcement officers complying with the PI, *see* 2d Cir. ECF No. 36 (Appellants' Reply), the Attorney General represented during the August 15, 2023 hearing on their motion to modify that they "have heard anecdotal reports that the other [non-party] sheriffs are complying with the terms of the injunction, applying the 9 percent rate for debts before the act[] came into force." Exhibit D (August 15, 2023 Hearing Transcript) at 14:11-15:16.

Given that the PI has now been substantially narrowed in its application—resolving any question, even if there was one, as to whether non-party Sheriffs outside the three Sheriff-Defendants are bound or should reasonably believe they are bound—it is vitally important that the non-party Sheriffs who received distribution of the original PI now receive official, Court-ordered distribution of the modified PI. This distribution should include a cover letter explaining: (a) the original PI was distributed to them by order of the District Court but did not bind them; (b) the PI has now been modified to apply to only the three named Plaintiffs

in the District Court matter, and, even for the three named Plaintiffs, is only applicable in Chautauqua, Erie, and Niagara Counties; and (c) even if it was unclear whether the original PI bound them, this modified PI does not bind them.

As raised in Appellant's motion, it is a bedrock principle under Federal Rule of Civil Procedure 65(d)(2) that injunctions may not bind non-parties unless they are aiding and abetting or acting in concert with parties or agents of the parties. *See* 2d Cir. ECF No. 10 (Appellants' Motion) ¶¶ 47-49. This Court may order the proposed relief if it finds that there is any risk that the District Court's directive to distribute the original PI, together with its colloquy with counsel for the Defendant-Sheriffs and Appellees that suggested that non-party Sheriffs should and would comply with the PI and not the Act despite not being bound by it, violated Rule 65.

This Court may also order such relief without finding that the District Court abused its authority because "the scope of an injunction should be clarified where there is any doubt as to whom it applies" and to prevent "unwitting contempt." *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998*)*. Here, there is still confusion, at best, as to whether the District Court intended to bind or leave the impression that the original PI bound non-party Sheriffs. *See* 2d Cir. ECF No. 41 (Appellants' FRAP 28(j) Letter).

Finally, even if this Court were to accept that the District Court had authority to order distribution of the original PI to 59 non-parties because the Appellees had plausibly sought statewide relief on the basis of their class action allegations, because the original PI has now been modified and Appellees have not in fact sought to certify a class,[3] it necessarily follows that the District Court should order distribution of the modified PI to the same group of non-party Sheriffs to whom the original PI was distributed to ensure consistency and that the non-parties understand their legal obligations.

Respectfully submitted,

*/s/ Michael N. Litrownik*
Michael N. Litrownik
Counsel for Appellants

/Enclosures/

cc: All counsel of record (via ECF and email service)

---

[3] At oral argument on the Attorney General's motion to amend, Appellees stated, "we do not believe class certification is in necessary in this case." Ex. D (Aug. 15, 2023 Hearing Tr.) at 22:7-8. Later, in response to the District Court's question, "why are you not bringing on now the motion for class certification?" Appellees responded, "we will do so expeditiously." *Id.* at 31: 13-4, 16. Appellants' understanding, however, is that Appellees, to date, have not developed any discovery record in the District Court to support a potential motion for class certification.

**EXHIBIT A**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/15/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREATER CHAUTAUQUA FEDERAL CREDIT
UNION, individually and on behalf of all others
similarly situated, BOULEVARD FEDERAL
CREDIT UNION, individually and on behalf of all
others similarly situated, GREATER NIAGARA
FEDERAL CREDIT UNION, individually and on
behalf of all others similarly situated,

                              Plaintiffs,

                    -against-

SHERIFF JAMES B. QUATTRONE, in his official
capacity as Sheriff of Chautauqua County, New
York, SHERIFF JOHN C. GARCIA, in his official
capacity as Sheriff of Erie County, New York,
SHERIFF MICHAEL J. FILICETTI, in his official
capacity as Sheriff of Niagara County, New York,
and LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                              Defendants.

1:22-cv-2753 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
MODIFY THE SCOPE OF
PRELIMINARY INJUNCTION**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs brought this action challenging the enactment of a New York statute which reduces the default post-judgment interest rate applicable to money judgments for consumer debts from nine percent to two percent, both retroactively and prospectively. By order dated April 28, 2022, the Court preliminarily enjoined the retroactive application of the statute after concluding that Plaintiffs were likely to succeed on their claim that the reduction of the interest rate with respect to already-accrued interest works as an unconstitutional taking. The Attorney General, now joined as a named defendant in the action, moves to modify the scope of that preliminary injunction. For the reasons that follow, the motion is granted.

**FACTUAL BACKGROUND**

Familiarity with this Court's previous opinions in this case is presumed. *See Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405 (S.D.N.Y. 2022) ("PI Opinion"); *Greater Chautauqua Fed. Credit Union v. Marks*, No. 22-cv-2753, 2023 WL 2744499 (S.D.N.Y. Mar. 31, 2023) ("MTD Opinion"). In brief, on December 31, 2021, Governor Kathy Hochul signed into law the Fair Consumer Judgment Interest Act (the "Act"), which reduced the default post-judgment interest rate on state-court judgments involving consumer debts from nine percent to two percent. MTD Opinion at *2. By its express terms, the Act applies prospectively to judgments entered after the Act's effective date of April 30, 2022, and also retroactively to interest on the unpaid portions of judgments that were entered prior to the effective date. *Id.*

Plaintiffs Greater Chautauqua Federal Credit Union, Boulevard Federal Credit Union, and Greater Niagara Federal Credit Union collectively hold hundreds of consumers judgments. *Id.* at 3. Before the Act went into effect, Plaintiffs commenced this action by filing a putative class action complaint against Lawrence K. Marks, then-Chief Administrative Judge of the State of New York,[1] and the sheriffs of Chautauqua, Erie, and Niagara counties (the "Sheriff Defendants"). *Id.* Plaintiffs asserted claims rooted in both the Due Process Clause and the Takings Clause of the Constitution and sought a judgment enjoining the enforcement of the Act and declaring its retroactive application unconstitutional. *Id.* Plaintiffs also moved for a preliminary injunction to prohibit the Act from going into effect on April 30, 2022. *Id.*

The Court held oral argument on Plaintiffs' Motion for a Preliminary Injunction on April 20, 2022. [ECF No. 49]. Although she was not named as a defendant, a lawyer for the New York

---

[1] Judge Marks resigned as Chief Administrative Judge in November 2022. The Court dismissed the claims against Judge Marks in an Opinion dated March 31, 2023. [ECF No. 102]. At the request of the Attorney General [ECF No. 108], the Court directed the Clerk of Court to remove Judge Marks's name and title from the caption following his dismissal from the case. [ECF No. 109].

State Attorney General Letitia James (the "Attorney General") appeared at the hearing and expressed the intent of the Attorney General to intervene in the event that the case was not resolved on the threshold issues.  MTD Opinion at *3.  The next day, Plaintiffs filed an Amended Complaint, which added the Attorney General as a defendant.  *Id.*  The Attorney General then filed a letter arguing that she was not a proper party to the suit and that, in any event, Plaintiffs' motion for a preliminary injunction should be denied because they have failed to demonstrate a likelihood of success on the merits.  *Id.*

On April 28, 2022, the Court granted the preliminary injunction with respect to the Sheriff Defendants, after concluding that Plaintiffs have standing to sue those defendants, and that, on balance, the factors considered in evaluating a preliminary injunction weighed in Plaintiffs' favor. PI Opinion at 425.  The Court denied the preliminary injunction with respect to Judge Marks, concluding that he is not a proper party against whom injunctive relief may be granted.  PI Opinion at 423.  The Court did not consider whether the Attorney General was a proper defendant because a preliminary injunction had not been sought against her.  PI Opinion at 415 n.1.

After the Court issued its Order, a motion to intervene was filed by an individual debtor and by a legal services organization (together, the "proposed intervenors") for the purpose of seeking to modify the preliminary injunction order.  MTD Opinion at *4.  Specifically, the proposed intervenors argued that the preliminary injunction should apply only to the three Sherriff Defendants (and no non-party sheriffs) and to the three Plaintiff creditors (and no non-party creditors).  *Id.*  The Court denied that motion on timeliness grounds, concluding that the "proposed intervenors had reasonable notice of the [preliminary injunction] proceedings and delayed

unreasonably in filing their motion . . . , to the point that any intervention would prejudice Plaintiffs, who would be forced to relitigate issues already decided." *Id.* at 7.[2]

In the same opinion, the Court addressed the motions to dismiss filed by the Defendants. The Court first dismissed the case against Judge Marks, concluding that he was not a proper party, and declined to dismiss the case against the Attorney General. MTD Opinion at *8–9. Moving to the merits, the Court dismissed Plaintiffs' due process claim and physical takings claim, while concluding that Plaintiffs had plausibly stated a claim for a regulatory taking. *Id.* at *10–16. In so doing, the Court noted that Plaintiffs, as clarified in their briefing, brought only an "as-applied" challenge to the Act, and not a "facial" challenge. *Id.* at *9 n.18.

Several weeks after the Court issued its Opinion, the Attorney General filed a letter requesting a conference regarding her anticipated motion to modify the preliminary injunction "so that it provides relief to only the three named plaintiffs." [ECF No. 110 at 2]. The Sherriff Defendants opposed this request, claiming that modifying the injunction would create an administrative burden for them, "as it would require them to apply different rates of interest to different creditors within their counties." [ECF No. 111]. Plaintiffs also opposed the request, for reasons discussed at greater length below. [ECF No. 112].

The Court held an Initial Pretrial Conference at which the anticipated motion to modify the preliminary injunction was discussed and a briefing schedule was set. [ECF No. 125] ("IPTC Transcript"). The Attorney General filed her motion [ECF No. 123] and accompanying memorandum of law [ECF No. 124] ("AG Br."). The Sheriff Defendants opposed the motion through the Declaration of Aaron M. Saykin, Esq. [ECF No. 128] ("Saykin Decl."), and the

---

[2] The proposed intervenors have appealed the Court's decision to the Second Circuit [ECF No. 113], where the appeal has been stayed to allow consideration of this Court's disposition of the instant motion. *See Greater Chautauqua Federal Credit Union v. Quattrone*, No. 23-733 (2d Cir. 2023).

Plaintiffs filed a Memorandum of Law in opposition [ECF No. 129] ("Opp."). The Attorney General filed a reply [ECF No. 130] ("Reply"). Oral argument was held on August 15, 2023 [ECF No. 137] ("Oral Arg. Transcript").

## LEGAL STANDARD

The pending motion raises a threshold issue of what standard governs a motion to modify a preliminary injunction. The Attorney General and Plaintiffs offer different competing standards.

The Attorney General derives her standard from the Second Circuit's decision in *Sierra Club v. Army Corps of Engineers*, 732 F.2d 253 (2d Cir. 1984). That case concerned a request to modify an injunction that called a halt to Westway, the proposed west-side Manhattan super highway. *Sierra Club*, 732 F.2d at 254. The district judge had enjoined most of the construction work (for environmental reasons) but had allowed certain activities to continue for a set period of time. *Id.* at 255. When that time expired, the New York State Department of Transportation sought to modify the injunction in order to permit it to continue certain preliminary design and engineering work on the project. *Id.* The district judge denied that request, which the Second Circuit found to be improper since the decision effectively would have killed the project and upended the *status quo*. *Id.* at 255.

As relevant here, the Second Circuit arrived at its conclusion by first addressing the standard governing a motion to modify an injunction. The standard, the court explained, turned on the nature of the injunction. If the injunction was "final," the district court could modify it "only where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts." *Id.* at 256. If the injunction was "preliminary," the district court would be "charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Id.* The Second Circuit's differentiation between the standards to modify "final" and "preliminary" relief is bolstered by the text of the Federal Rule of Civil Procedure,

which notes the heightened standard in Rule 60(b)(5) only applies to "a *final* judgment, order, or proceeding."[3]  Fed. R. Civ. P. 60(b) (emphasis added); *see also Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977) ("Rule 60(b) applies only to final orders and not to interlocutory de[c]rees" and district courts have "continuing plenary power over its interlocutory orders under which the Court is not bound by Rule 60(b)(5)'s strict standard of 'changed circumstances' " (citations omitted)).

Plaintiffs attempt to sidestep *Sierra Club*, focusing instead on some district court cases from within this Circuit.  Those cases invoke out-of-Circuit case law to conclude that a party moving to modify a preliminary injunction must show that such modification is justified by a "significant change in facts or law."  *Lawsky v. Condor Cap. Corp.*, No. 14-cv-2863, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014) (citations omitted); *see also Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-cv-5584, 2017 WL 4465726, at *4 (E.D.N.Y. June 20, 2017).  Plaintiffs concede that such a rule has not been adopted by the Second Circuit.  Opp. at 2–4.  But they claim that the out-of-Circuit cases are persuasive and that the use of the change-of-circumstances rule is consistent with the reasoning set forth in *Sierra Club*.  Opp. at 4.  The Court disagrees.

The standard that Plaintiffs urge this Court to employ—*i.e.*, requiring a significant change in law or facts—is akin to the standard that the Second Circuit has ruled applies to final or permanent injunctions.  While recent district court decisions may have departed from the Circuit's distinction between the governing standards for modification of preliminary versus final relief, those decisions do not attempt to distinguish or otherwise engage *Sierra Club*, which indisputably

---

[3] The Advisory Committee has further clarified that "interlocutory judgments are not brought within the restrictions of [Rule 60(b)(5)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.  Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment.

remains good and binding law.  As summarized above, *Sierra Club* explained that the standard governing a motion to modify an injunction instead turns on the nature of the injunction to be modified.  *Sierra Club*, 732 F.2d at 256.  Injunctions are equitable remedies that "march[] along according to the nature of the proceeding."  *Id*.  They are "executory and subject to adaption as events may shape the need," and the district court's power to modify a preliminary injunction "like the power over all its orders, is inherent."  *Id*.

## DISCUSSION

### I.   INJUNCTIVE RELIEF WITH RESPECT TO AN "AS-APPLIED" CLAIM SHOULD BE NARROWLY TAILORED.

As a general rule, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*."  *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994).  "Although the occasional case" may require a court to "to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute," the court should not "provide relief to nonparties when a narrower remedy will fully protect the litigants."  *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995).

Here, Plaintiffs filed their Complaint contemporaneously with their motion for a preliminary injunction seeking to prohibit the Defendants from implementing the retroactive applicability of the Act, which was set to go into effect imminently.  [ECF No. 1, 10].  Given the urgency, the Court considered the case at the time the injunction was sought and without the benefit of the Complaint and adversarial briefing.  PI Opinion at 419.  The Court relied primarily on the parties' Memorandums of Law with respect to the sought preliminary injunction.  Significantly, the Complaint is styled as a "Class Action Complaint," and devotes an entire section to listing—albeit in rather conclusory fashion—"class allegations." Compl. ¶¶ 51–61; *see also* AC ¶¶ 58–68. At that juncture, a class had not yet been certified, which was not atypical at such an early stage in

the proceeding.  With that backdrop, the Court preliminary enjoined the Sheriff Defendants from enforcing the Act on a retroactive basis to *all* judgment holders, and not just the three named Plaintiffs.

However, this proceeding has continued "march[ing] along," and in light of the motion before the Court, the Court now must consider whether the current injunction is "subject to adaption as events [] shape the need." *Sierra Club*, 732 F.2d at 256.  This case has now been pending for almost a year and a half and has been actively litigated.  Since the preliminary injunction was issued, the parties have naturally filed subsequent motions, submitted subsequent letters, and provided supplemental documents.  The nature of Plaintiffs' claims has evolved. Significantly, in its ruling on the Attorney General's motion to dismiss, the Court noted that while the Amended Complaint was ambiguous as to whether Plaintiffs asserted a facial or as-applied challenge to the Act, "Plaintiffs clarif[ied] in their omnibus opposition brief that they are bringing an *as-applied challenge*."  MTD Opinion at *16 n.18 (citing [ECF No. 95]).  The Attorney General argues in its motion to modify the preliminary injunction that, since the litigation is now limited to the constitutionality of the Act *as-applied*, the injunction should be limited to the three named Plaintiffs, and not to *all* consumer debt judgment holders statewide.  A.G. Br. at 2–3.

The Second Circuit's decision in *Kane v. De Blasio* is instructive on the application of preliminary injunctive relief in cases with facial versus as-applied claims.  19 F.4th 152 (2d Cir. 2021).  In *Kane*, the court considered a Free Exercise Challenge to New York City's vaccine mandate brought by public school employees.  19 F.4th at 158.  The plaintiffs sought preliminary injunctive relief against the enforcement of the mandate, asserting that the mandate was unconstitutional as both a facial matter and as applied to them.  *Id.*  The Second Circuit concluded that the named plaintiffs were likely to succeed on the merits of their as-applied challenge, but not

their facial challenge.  *Id.* at 158–59, 164.  As a result, the Court declined to extend preliminary injunctive relief beyond the named plaintiffs "to thousands of supposedly 'similarly situated' nonparties to this litigation."  *Id.* at 172.  The Second Circuit emphasized that the plaintiffs' request for broader relief attempted to transform " 'as applied' claims into what are effectively claims on behalf of a class."  *Id*. at 173.

Here, although Plaintiffs styled this case as a putative class action, Plaintiffs have expressly stated that their Complaint pleads an "as-applied regulatory taking."  *See* [ECF No. 95] at 20.  There is no longer a facial challenge and this Court's motion to dismiss opinion was grounded on that rationale.  In that opinion, the Court held that Plaintiffs had stated a regulatory takings claim under the *Penn Central Transportation Co. v. City of New York* analysis, which necessarily involves a *fact-based* inquiry into various "complex [] factors including [1] the regulation's economic effect on the [property owner], [2] the extent to which the regulation interferes with reasonable investment-backed expectations, and [3] the character of the government action."  MTD Opinion at *12 (citing 438 U.S. 104 (1978)).  Specifically, the Court relied on *Plaintiffs'* property value reduction, *Plaintiffs'* expectations regarding post-judgment interest, and *Plaintiffs'* decisions about loan criteria and acceptable risk.  The Court noted these factors were "mere examples of the types of circumstances which should be considered in a regulatory takings analysis . . . 'characterized by essentially ad hoc, *factual inquirie*s, designed to allow careful examination and weighing of all the relevant *circumstances*.' "  *Id*. at *13–14 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)).

Harkening back to *Kane*, after finding that the plaintiffs failed to state a facial claim, the Second Circuit declined to extend preliminary injunctive relief beyond the named plaintiffs. 19 F.4th at 172.  Similarly, Plaintiffs here have now made clear that they assert an as-applied

challenge to the Act.  Accordingly, the Court now concludes that consistent with *Kane*, the preliminary injunctive relief in this case should be limited to the three Named Plaintiffs.  By modifying the preliminary injunctive relief to include only the Named Plaintiffs, the Court is ensuring it does not "extend its invalidation of a statute further than necessary to dispose of *the case before it*." *Kane* 19 F.4th at 174 (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985)).

## II.     PLAINTIFFS HAVE FAILED TO FILE FOR CLASS CERTIFICATION

Plaintiffs argue that narrowing the preliminary injunction would undermine the purpose of the preliminary injunction by upending the *status quo* for the putative class—*i.e.*, "thousands of debt holders across this state."  Opp. at 1, 9.  The glaring issue with this argument is that there is no "class," and Plaintiffs obtained injunctive relief relying on their individual, factual circumstances.  While Plaintiffs may have been able to rely on its "class action" argument in its original motion for the preliminary injunction, the Court can no longer base extraordinary injunctive relief on the possibility that Plaintiffs may attempt to certify a class.  It is noteworthy that despite styling the Complaint as a "Class Action Complaint" and inserting rather conclusory class allegations, Plaintiffs have done nothing in the more than a year since its filing to attempt to certify a purported class.  In fact, at oral argument on the pending motion to modify the injunction, when the Court asked Plaintiffs whether they "[a]re [] intending to move for class certification," Plaintiffs repeatedly insisted that they "do not believe class certification is in [sic] necessary in this

case." [4]   Indeed, Plaintiffs maintain that they did not intend to move for certification "at this point."[5] Oral Arg. Transcript p. 22 ¶¶ 3–8, p. 23, ¶¶ 4–7.

This Court heeds the Second Circuit's warning that "the rule that injunctive relief should be narrowly tailored to prevent harm to the *parties before the court* 'applies with special force where,' as here, 'there is no class certification.' " 19 F.4th at 174 (citing *California v. Azar*, 911 F.3d 558, 582–83 (9th Cir. 2018) (emphasis added); *see id.* ("Injunctive relief generally should be limited to apply *only to named plaintiffs* where there is no class certification.") (emphasis added); *see also Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) ("[S]uch broad relief is rarely justified because injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*."); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 171 (3d Cir. 2011) (collecting cases in which courts have "found injunctions to be overbroad where their relief amounted to class-wide relief and no class was certified"). To do otherwise would "end run around the rules governing class certification." *Kane*, 19 F.4th at 173. "Why, after all, would [P]laintiffs go through the trouble of demonstrating numerosity, commonality, typicality, and adequa[cy] if they can simply obtain classwide relief as [they] now" have under the current preliminary injunction?[6] *Id.*

---

[4] On oral argument, Plaintiffs maintained that "[t]he distinction between as-applied and facial in this particular case really is one without a difference" because "[t]he class [Plaintiffs have] defined is the only class . . . singled out by the amendment." Oral Arg. Transcript p. 30 ¶¶ 24–25, p. 40, ¶¶ 3–6. The Court recognized that, "[i]f [Plaintiffs] get a class certified" and the putative class includes all holders of unpaid consumer debt judgments that were entered before the effective date, Plaintiffs "may" have an argument "that there is not a lot of distinction between a facial challenge to the retroactive application and an as-applied challenge with respect to the Plaintiffs." *Id.* at p. 40, ¶¶ 15–20. However, the Court clarified that that argument "presumes [Plaintiffs] move for class certification" and the class is certified. *Id.* at p. 40, ¶¶ 21–23.

[5] When first asked by the Court whether they intended to move for class certification, Plaintiffs stated "at this point, no." Oral Arg. Transcript p. 22, 14–15. However, once the Court pressed the issue, Plaintiffs changed course mid-argument, stating that they "do intend to move for class certification." Despite this apparent change of heart, Plaintiffs have yet to move for class certification. Oral Arg. Transcript p. 23, 1–2.

[6] Aside from the aforementioned conclusory class allegations contained in the Complaint, Plaintiffs have not offered any evidentiary showing that they would satisfy the requirements for class certification. Thus, the Court does not attempt to surmise on the likelihood that Plaintiffs would successfully certify the purported class.

## CONCLUSION

For the foregoing reasons, the motion by the Attorney General to modify the scope of the preliminary injunction order to limit it to the three Named Plaintiffs is hereby GRANTED.  The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 110 and 123.

**SO ORDERED.**

**Date:   September 15, 2023**
       **New York, NY**

                                       **MARY KAY VYSKOCIL**
                                     **United States District Judge**

**EXHIBIT B**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/20/2023

100 William Street, 6th Floor
New York, NY 10038
Tel 212-417-3700
Fax 212-417-3890
www.mobilizationforjustice.org

**Via ECF**

September 20, 2023

Hon. Mary Kay Vyskocil
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

  Re: *Greater Chautauqua v. Quattrone,* No. 22-cv-02753 (MKV)

Dear Judge Vyskocil:

Mobilization for Justice and Cuti Hecker Wang LLP represent Bartel Miller and Western New York Law Center, who have appealed the Court's denial of their intervention motion, ECF No. 102, and sought injunctive relief pending appeal (2d Cir. Case No. 23-733).

At the conclusion of the Court's original preliminary injunction Order dated April 22, 2022, ECF No. 57, the Court directed Plaintiffs to "immediately … provide notice of this Order to all sheriffs of all sixty-two counties in New York." *Id.* at 35. We respectfully request that the Court likewise direct Plaintiffs immediately to provide notice of the amended preliminary injunction Order dated September 15, 2023, ECF No. 139, to all sheriffs of all sixty-two counties in New York State to ensure that all sheriffs understand that (a) the original preliminary injunction Order is no longer in effect; (b) no preliminary injunction is in effect outside of Chautauqua, Erie, and Niagara counties, and (c) even within those counties, the amended preliminary injunction Order only applies to the three named Plaintiffs in this action.[1] We respectfully submit that such notice is necessary to dispel confusion and ensure that all sheriffs understand their legal obligations.

Respectfully submitted,

*/s/ Michael N. Litrownik*
Michael N. Litrownik

cc: All counsel of record (via ECF)

> **The request is DENIED.  The entities making the request are not parties to this case and have no legal interests that are impacted by the operative (modified) preliminary injunction, and as such they lack standing to seek the requested relief. SO ORDERED.**
>
> Date:  9/20/2023
> New York, New York
>
> Mary Kay Vyskocil
> United States District Judge

---

[1] The Attorney General takes no position on this request except to reiterate her position that the nonparty sheriffs are not subject to the preliminary injunction. The Defendant-Sheriffs take no position on this request. The Plaintiffs refused to provide their position on this request but stated that they "agree with the Court's ruling denying your motion to intervene, such that you have no standing."

# EXHIBIT C

| | |
|---|---|
| **From:** | West, Emily Seiderman <EAWest@Venable.com> |
| **Sent:** | Friday, September 29, 2023 1:32 PM |
| **To:** | Mike Litrownik |
| **Cc:** | Nawaday, Kan M.; Mirviss, Mitchell Y.; Carolyn E. Coffey; Belinda Luu; Eric Hecker; Rinehart, Liz Clark |
| **Subject:** | RE: Greater Chautauqua v Quattrone, 2d Cir No. 23-733, SDNY No. 22-cv-02753-MKV |

Mike:

We do not agree to enter into such a stipulation. Our position remains the same as before. You have no standing to ask for that relief because the district court denied your motion to intervene, and we believe the court's reasoning on this was sound. In addition, you did not ask the Second Circuit to direct us to serve the non-party sheriffs with any order narrowing the injunction, so the issue you identify is not an issue in the appeal. It is also unnecessary for you to impose on any court's time with this request. You could simply serve the order on the other sheriffs, rather than continuing to pursue this relief.

-Emily

**Emily Seiderman West, Esq. | Venable LLP**
**t** 212.503.9816 | **f** 212.307.5598 | **m** 607.377.0428
151 W. 42nd Street, 49th Floor, New York, NY 10036

EAWest@Venable.com | www.Venable.com

**From:** Mike Litrownik <mlitrownik@mfjlegal.org>
**Sent:** Wednesday, September 27, 2023 4:05 PM
**To:** West, Emily Seiderman <EAWest@Venable.com>
**Cc:** Nawaday, Kan M. <KMNawaday@Venable.com>; Mirviss, Mitchell Y. <MYMirviss@Venable.com>; Carolyn E. Coffey <ccoffey@mfjlegal.org>; Belinda Luu <bluu@mfjlegal.org>; Eric Hecker <ehecker@chwllp.com>; Rinehart, Liz Clark <LCRinehart@venable.com>
**Subject:** RE: Greater Chautauqua v Quattrone, 2d Cir No. 23-733, SDNY No. 22-cv-02753-MKV

**Caution: External Email**

Emily,

As you know, our supplemental letter-brief to the Circuit addressing the impact of the District Court's order modifying the PI is due by Oct. 6, with your response due within 21 days of our letter. Given that the District Court has granted the AG's motion to modify the PI to limit its application to just your clients, we have only one remaining issue on which we will continue to seek injunctive relief pending appeal from the Circuit.

We write now to attempt to resolve the remaining issue without further expenditure of time or resources by either of us or the Circuit. To resolve this issue, we request that you enter into a stipulation, which we will ask the District Court to so-order, in which you agree to distribute the modified PI, ECF No. 139, to all non-party Sheriffs who received the distribution of the original PI, along with a cover letter explaining that (a) the original PI was distributed to them by order of the District Court but did not bind them; (b) the PI has now been modified to apply to only the three named Plaintiffs, and, even for the three named Plaintiffs, only in Chautauqua, Erie, and Niagara Counties; (c) even if it was unclear whether the original PI bound them, this modified PI unquestionably does not bind them.

Please let us know your thoughts or if you would like to discuss further by phone. Thanks.

Mike

---

**From:** West, Emily Seiderman <<EAWest@Venable.com>>
**Sent:** Wednesday, September 20, 2023 10:26 AM
**To:** Spitzer, Daniel A. <<DSpitzer@hodgsonruss.com>>; Grube, Mark <<Mark.Grube@ag.ny.gov>>; Mike Litrownik <<mlitrownik@mfjlegal.org>>; Carolyn E. Coffey <<ccoffey@mfjlegal.org>>; Rinehart, Liz Clark <<LCRinehart@venable.com>>; Murdukhayeva, Ester <<Ester.Murdukhayeva@ag.ny.gov>>; Berg, Michael <<Michael.Berg@ag.ny.gov>>; Saykin, Aaron M. <<ASaykin@hodgsonruss.com>>; Belinda Luu <<bluu@mfjlegal.org>>; Eric Hecker <<ehecker@chwllp.com>>
**Cc:** Nawaday, Kan M. <<KMNawaday@Venable.com>>; Mirviss, Mitchell Y. <<MYMirviss@Venable.com>>
**Subject:** RE: Greater Chautauqua v Quattrone, 2d Cir No. 23-733, SDNY No. 22-cv-02753-MKV

Mike:

Our position is that we agree with the Court's ruling denying your motion to intervene, such that you have no standing.

--Emily

**Emily Seiderman West, Esq. | Venable LLP**
**t** 212.503.9816 | **f** 212.307.5598 | **m** 607.377.0428
151 W. 42nd Street, 49th Floor, New York, NY 10036

EAWest@Venable.com | www.Venable.com

---

**From:** Spitzer, Daniel A. <<DSpitzer@hodgsonruss.com>>
**Sent:** Wednesday, September 20, 2023 9:04 AM
**To:** Grube, Mark <<Mark.Grube@ag.ny.gov>>; Mike Litrownik <<mlitrownik@mfjlegal.org>>; Carolyn E. Coffey <<ccoffey@mfjlegal.org>>; Rinehart, Liz Clark <<LCRinehart@venable.com>>; Murdukhayeva, Ester <<Ester.Murdukhayeva@ag.ny.gov>>; Berg, Michael <<Michael.Berg@ag.ny.gov>>; Saykin, Aaron M. <<ASaykin@hodgsonruss.com>>; Belinda Luu <<bluu@mfjlegal.org>>; Eric Hecker <<ehecker@chwllp.com>>
**Cc:** Nawaday, Kan M. <<KMNawaday@Venable.com>>; West, Emily Seiderman <<EAWest@Venable.com>>; Mirviss, Mitchell Y. <<MYMirviss@Venable.com>>
**Subject:** RE: Greater Chautauqua v Quattrone, 2d Cir No. 23-733, SDNY No. 22-cv-02753-MKV

**Caution: External Email**

Mike

The sheriffs take no position on the proposal, including whether a non-party has standing to make this request.

Dan

**Daniel A. Spitzer**
Partner
Hodgson Russ LLP

Tel:      716.848.1420
Mobile:  716.472.4076
Fax:      716.819.4650



website | vCard | bio | email

The Guaranty Building | 140 Pearl Street, Suite 100 | Buffalo, NY 14202
Tel: 716.856.4000 | map

605 Third Ave, Suite 2300 | New York, NY 10158
Tel: 212.751.4300 | map



.

**From:** Grube, Mark <Mark.Grube@ag.ny.gov>
**Sent:** Monday, September 18, 2023 5:36 PM
**To:** Mike Litrownik <mlitrownik@mfjlegal.org>; Carolyn E. Coffey <ccoffey@mfjlegal.org>; Rinehart, Liz Clark <LCRinehart@venable.com>; Spitzer, Daniel A. <DSpitzer@hodgsonruss.com>; Murdukhayeva, Ester <Ester.Murdukhayeva@ag.ny.gov>; Berg, Michael <Michael.Berg@ag.ny.gov>; Saykin, Aaron M. <ASaykin@hodgsonruss.com>; Belinda Luu <bluu@mfjlegal.org>; Eric Hecker <ehecker@chwllp.com>
**Cc:** Nawaday, Kan M. <KMNawaday@Venable.com>; West, Emily Seiderman <EAWest@Venable.com>; Mirviss, Mitchell Y. <MYMirviss@Venable.com>
**Subject:** RE: Greater Chautauqua v Quattrone, 2d Cir No. 23-733, SDNY No. 22-cv-02753-MKV

<div style="background:red;color:white;text-align:center;font-weight:bold">External Email - Use Caution</div>

The Attorney General takes no position on the request except to reiterate her position that the nonparty sheriffs are not subject to the preliminary injunction.

**From:** Mike Litrownik <mlitrownik@mfjlegal.org>
**Sent:** Monday, September 18, 2023 4:37 PM
**To:** Carolyn E. Coffey <ccoffey@mfjlegal.org>; Rinehart, Liz Clark <LCRinehart@venable.com>; Spitzer, Daniel A. <DSpitzer@hodgsonruss.com>; Grube, Mark <Mark.Grube@ag.ny.gov>; Murdukhayeva, Ester <Ester.Murdukhayeva@ag.ny.gov>; Berg, Michael <Michael.Berg@ag.ny.gov>; Saykin, Aaron M. <ASaykin@hodgsonruss.com>; Belinda Luu <bluu@mfjlegal.org>; Eric Hecker <ehecker@chwllp.com>
**Cc:** Nawaday, Kan M. <KMNawaday@Venable.com>; West, Emily Seiderman <EAWest@Venable.com>; Mirviss, Mitchell Y. <MYMirviss@Venable.com>
**Subject:** RE: Greater Chautauqua v Quattrone, 2d Cir No. 23-733, SDNY No. 22-cv-02753-MKV

Counsel,

Given (a) the District Court's directive in the original PI ordering the Plaintiff-Creditors to distribute the PI to 59 non-party sheriffs across New York, ECF No. 57 at 35, and (b) the District Court's September 15 decision granting the NYAG's motion to modify the PI, ECF No. 139, we are going to submit a letter requesting that the District Court likewise order the distribution of the modified PI to the same set of Sheriffs to whom the Plaintiffs distributed the original PI.

Please let us know your client's position on this request. Thanks.

**EXHIBIT D**

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  GREATER CHAUTAUGUA FEDERAL CREDIT UNION,

4                Plaintiff,

5        v.                          22 Civ. 2753 (MKV)

6  SHERIFF JAMES B. QUATTRONE, et al.,

7                Defendants.

8  ------------------------------x
                                   New York, N.Y.
9                                  August 15, 2023
                                   1:30 p.m.
10
   Before:
11
                    HON. MARY KAY VYSKOCIL,
12
                                        District Judge
13
                         APPEARANCES
14
   VENABLE LLP
15      Attorneys for Plaintiff
   BY:  KAN MIN NAWADAY
16      EMILY SEIDERMAN WEST

17 HODGSON RUSS LLP
        Attorneys for Defendant Sheriff James B. Quattrone
18 BY:  CARMINE A. CASTELLANO

19 NYS OFFICE OF THE ATTORNEY GENERAL
        Attorneys for Defendant Letitia James
20 BY:  MICHAEL A. BERG
        MARK S. GRUBE
21

22

23

24

25

1          (Case called)

2          THE COURT:  Good morning, Ms. Dempsey.

3          Please be seated, everyone.

4          THE DEPUTY CLERK:  Counsel starting with plaintiff,

5     please state your name for the record.

6          MS. WEST:  Good morning, your Honor.  Emily Seiderman

7     West for the plaintiff, with my colleague, Kan Nawaday.

8          THE COURT:  I'm sorry.  I'm not hearing you.

9          MS. WEST:  Excuse me.

10          Emily West for the plaintiffs.  I'm joined with my

11     colleague, Kan Nawaday.

12          THE COURT:  Good afternoon to both of you.

13          MR. GRUBE:  Good afternoon, your Honor.

14          Mark Grube for the New York State Attorney General

15     Letitia James.  With me is my colleague Michael Berg.

16          THE COURT:  All right.  Good afternoon to you

17     gentlemen.

18          MR. BERG:  Good afternoon, your Honor.

19          MR. CASTELLANO:  Carmine Castellano, law firm of

20     Hodgson & Russ for defendants Sheriff James Quattrone, Sheriff

21     John Garcia, and Sheriff Michael Filicetti.

22          Good afternoon, your Honor.

23          THE COURT:  Good morning to you, Ms. Franko.

24          All right.  We're here on the motion by the Attorney

25     General to modify the scope of the preliminary injunction that

1    the court previously issued.

2            Who wishes to be heard?

3            MR. GRUBE:  I will speak on behalf of the Attorney

4    General.

5            THE COURT:  All right.  Thank you.

6            MR. GRUBE:  Good afternoon, your Honor.  Mark Grube

7    for the New York Attorney General Letitia James.

8            This motion presents a question of law as to the scope

9    of an Article III equitable powers to issue classwide relief on

10   as-applied claim concerning plaintiff's individualized

11   circumstances because courts should provide the least

12   burdensome remedy and not afford relief to nonparties unless

13   necessary to provide relief to the litigants before the court.

14   The court should modify the preliminary injunction to limit its

15   scope to the three named plaintiffs.

16           THE COURT:  All right.  Counsel, let me ask you,

17   you spend a lot of time in your briefing trying to refute the

18   plaintiff's argument that you have to show changed

19   circumstances.  But you never do articulate to me what you say

20   is the proper test if it's not changed circumstances.

21           So what is your burden here as the movant?

22           MR. GRUBE:  Well, first I would like to say that under

23   any standard, the Attorney General's motion should prevail, and

24   that's why in the reply brief, we do not spend much time on it.

25           THE COURT:  You don't spend a lot of time in it in

1    your moving brief either, really.

2         MR. GRUBE:  Under *Sierra Club* the court exercises the

3    same general discretion that it applies on the preliminary

4    injunction in the first place.

5         THE COURT:  So are you basically saying then this is a

6    redo of the motion for a preliminary injunction now with the

7    Attorney General?

8         MR. GRUBE:  No, because there are changed

9    circumstances here, which is that after the motion to dismiss

10   ruling, the scope of plaintiff's claim has been clarified.

11        Plaintiffs abandon their facial claim they did not

12   seek to defend in the motion to dismiss ruling, and the motion

13   to dismiss ruling clarified that near diminution in revenue is

14   not enough to state a regulatory takings claim under *Penn*

15   *Central.*

16        So in light of that clarification, the scope of the

17   preliminary injunction is not justified because now it's clear

18   that we're looking at individualized circumstances, lending

19   criteria, decisions that they were making in purported reliance

20   on the 9 percent interest rate.  And plaintiffs have not made

21   any showing or presented any evidence that those kind of facts

22   are common or typical across the putative class, that a larger

23   financial institution would make the same decision as the

24   smaller credit unions that plaintiffs represent.

25        THE COURT:  Right.

1          But, counsel, the purpose of the preliminary

2    injunction is to maintain the status quo while plaintiffs work

3    to prove their case, correct?

4          MR. GRUBE:  Well, it's to maintain the status quo

5    between the parties before the court, that have been brought

6    within the court's jurisdiction.

7          THE COURT:  But this case is, unlike the *Cane* case,

8    this is brought as a putative class action, is it not?

9          MR. GRUBE:  It is.  But in *Cane*, the court said that

10   did not matter.

11         THE COURT:  That's not exactly what the *Cane* court

12   said, but go ahead.

13         MR. GRUBE:  The *Cane* court said that --

14         Well, even accepting the plaintiff's -- the district

15   court cases that plaintiffs rely on, even in those cases,

16   assuming that they are good law, there was a motion for

17   certification made contemporaneously with the motion for

18   preliminary injunction and there was a finding of a likelihood

19   of success on class certification either in that case, or in

20   the stop-and-frisk cases there was a class that had been

21   certified in a parallel proceeding.

22         THE COURT:  So does the outcome here really turn on

23   my, in effect, prejudging the class certification motion?

24         MR. GRUBE:  Well, no, because there is no evidence

25   before the court to sustain a class certification motion, so

1    there is no basis for the court to prejudge it.

2               THE COURT:  No, but you're asking me to prejudge it

3    by, in effect, saying there isn't a class.

4               MR. GRUBE:  Well, that's what the Second Circuit said

5    in *Cane*.

6               THE COURT:  No.  In *Cane*, there were no allegations.

7               MR. GRUBE:  Right.

8               THE COURT:  That case was not brought as a putative

9    class action.

10              MR. GRUBE:  Right.

11              But the court said even if it had been a brought as a

12   class action, the result would not be different because it

13   would obviate the need for parties to go through Rule 23

14   requirements if they could simply obtain a classwide relief

15   based on an as-applied claim.

16              THE COURT:  That may be true if we were talking about

17   a permanent injunction, but all I've done here is issue a

18   preliminary injunction saying we're going to preserve the

19   status quo while the parties litigate the merits.

20              Isn't that the purpose of a preliminary injunction?

21              MR. GRUBE:  As I said before, it's the purpose to

22   maintain the status quo between the parties before the court,

23   but --

24              THE COURT:  But the parties here include a putative

25   class, unlike in *Cane*.

1          MR. GRUBE:  But putative class is nonparties until a

2     class has been certified, or at the very least that there is a

3     likelihood of certification.

4          THE COURT:  But now I get back to the question I just

5     asked you.

6          So how can I rule whether there is or there isn't a

7     likelihood of class certification without, in effect,

8     prejudging that motion?

9          MR. GRUBE:  It's plaintiff's burden, and they haven't

10    made that motion, so they haven't made that showing.  On the

11    cases which they rely, that motion is made at a very

12    preliminary stage so that plaintiffs can obtain classwide

13    relief on a preliminary basis.

14         THE COURT:  In your briefing -- which you did file

15    perhaps it was on the motion to dismiss, I'm not recalling.

16         MR. GRUBE:  Right.

17         THE COURT:  -- the AG was the one that argued it

18    needed discovery with respect to the plaintiff's claims here.

19         MR. GRUBE:  Well --

20         THE COURT:  So by doing that, you have effectively

21    forestalled any motion practice with respect to whether this is

22    properly a class or not, haven't you?

23         MR. GRUBE:  Well, what we said in our motion to

24    dismiss, at that point it was unclear whether plaintiffs sought

25    to bring a facial or as-applied challenge.  Because as your

1    Honor noted, it was in their opposition to the motion to

2    dismiss that they clarified they were seeking an as-applied

3    challenge.  And what we say in our motion to dismiss is that a

4    facial remedy is inappropriate under *Penn Central* because there

5    are these types of individualized determinations that turn on

6    individual lending criteria and thus a facial claim could not

7    survive.

8            THE COURT:  Which is what I found.

9            MR. GRUBE:  Right.

10           THE COURT:  There is no facial claim.

11           MR. GRUBE:  There is no facial claim.

12           For the same reasons, class certification is unlikely

13   to prevail as well, though plaintiffs are going to argue, yet

14   we haven't seen that.

15           THE COURT:  Correct.

16           That is why I keep circling back to, it sounds to me

17   like to give you the relief you're asking me for, I would have

18   to at a minimum find there is not a likelihood of success that

19   on class certification, wouldn't I?

20           MR. GRUBE:  Plaintiffs have the burden.  Remember,

21   we're --

22           I'm sorry.  We're here on a preliminary injunction.

23           THE COURT:  No.  We're here on your motion to modify a

24   preliminary injunction, so now you have the burden.

25           MR. GRUBE:  Right.

1      But it's still the extraordinary relief to enjoin a

2  duly-enacted statute of the state legislature absent any

3  evidence supporting classwide relief and --

4      THE COURT:  Was it you who appeared before me on the

5  initial pretrial conference?

6      MR. GRUBE:  Both I and my colleague, Mr. Berg, both

7  appeared on the initial conference.

8      THE COURT:  Mr. Berg said the following at the initial

9  pretrial conference:

10      "We agree 100 percent with your Honor."

11      I don't know what he was agreeing with.  I've tried to

12  go back and I'm not sure what specifically.  But he goes on to

13  say:

14      "We raised with plaintiff's counsel the -- our view

15  that class certification is unnecessary in this case and that

16  regardless of the scope of a preliminary injunction, if at the

17  end of the day plaintiffs obtained the relief they are

18  seeking -- which, of course, we will oppose -- but if they were

19  to prevail, then that would be curtains for the statute and

20  there would be no need to go through all the additional

21  disclosures and briefings for class certification because the

22  ultimate result would be the same."

23      MR. GRUBE:  Your Honor, I have a few responses to

24  that.

25      First is that from other portions of the preliminary

1    conference we cited in our brief, it was plaintiffs that

2    recognized the Attorney General's position that we took the

3    position that class certification was necessary for classwide

4    relief.  We made that statement a few pages later in the

5    transcript.

6             And one important point I want to note is that this

7    is not a statute that is enforced primarily or even in a

8    significant part by the state.  This is a statute that involves

9    the relations between creditors and debtors.

10            THE COURT:  Now, so are you telling me you don't

11   belong in this case after, you know, the AG has sort have been

12   all over the place here?

13            MR. GRUBE:  We're defending the statute.  I'm making

14   the point that we don't have the authority to waive the rights

15   of private individuals who benefit from the act, so...

16            THE COURT:  I understand.  You're saying that Mr. Berg

17   didn't really have the authority to make the statement he made?

18            MR. GRUBE:  He didn't make -- I don't think his

19   statement -- I think it was consistent with the lack of clarity

20   in terms of whether plaintiffs are seeking as-applied or facial

21   relief.

22            THE COURT:  All right.  I understand.

23            MR. GRUBE:  There was some ambiguity as to that.

24            THE COURT:  There was, but not by that point.

25            But go ahead.

1          MR. GRUBE:  Well, they still seem to, if not minimize,

2    completely eliminate the distinction between the types of

3    claims, because in their brief they are saying it doesn't

4    matter whether it's as-applied or facial.

5          THE COURT:  In their brief now.

6          MR. GRUBE:  In their brief opposing this motion on the

7    preliminary injunction.

8          THE COURT:  Well, I think I made pretty clear in my

9    opinion that it does matter.

10          MR. GRUBE:  Right.

11          And the motion to dismiss, the plaintiffs benefited

12    from that because they did not have to satisfy the higher

13    *Salerno* standard for a facial claim, they were able to survive

14    dismissal.

15          THE COURT:  They benefited in one respect, but their

16    facial claim, to the extent they were trying to assert one, was

17    dismissed.  They didn't benefit.

18          MR. GRUBE:  That's right.

19          They continued to benefit from the preliminary

20    injunction even though that facial claim has been dismissed in

21    that all that remains is a claim based on their individualized

22    circumstances, that they have not yet made any showing is

23    common or typical --

24          THE COURT:  No.  You're correct about that.

25          Let me ask you, what exactly is the relief you're

1   asking me to grant?

2           MR. GRUBE:  So it would limit the benefit of the

3   preliminary injunction to the three named plaintiffs.  This

4   could be accomplished by language simple as as-applied to

5   naming the plaintiffs.  This is how some district courts enter

6   sort of the preliminary injunctions.

7           THE COURT:  All right.  What about, I mean, you know

8   the history of this case, right?

9           MR. GRUBE:  Yes, yes.

10          THE COURT:  You've been following it.

11          MR. GRUBE:  Yes.

12          THE COURT:  You know at one point there were people

13  who moved very late in the motion practice to intervene --

14          MR. GRUBE:  Yes.

15          THE COURT:  -- and I denied that.  Those interveners,

16  as I recall, were asking to limit the injunction not only to

17  the three named plaintiffs, but also to the three named

18  defendant sheriffs.

19          Are you asking for that?

20          MR. GRUBE:  Right.

21          So this question came up at the initial conference,

22  and we explained that the terms of the preliminary injunction

23  order do not apply more broadly to the three named sheriffs

24  and --

25          THE COURT:  Don't apply beyond the three named

1    sheriffs, are you saying?

2           MR. GRUBE:  Right.

3           The expressed terms of the preliminary injunction

4    don't apply beyond the three named sheriffs, and so it doesn't

5    bind the other sheriffs by its plain terms, nor has there been

6    any showing under Rule 65(d) which governs nonparties being

7    bound by preliminary injunctions.

8           So we didn't make that motion because we don't think

9    it is necessary based as the preliminary injunction stands

10   today.  But if the court wishes to clarify it, it may.

11          THE COURT:  No.  I just want to understand what you're

12   seeking.

13          MR. GRUBE:  Right.

14          We're just seeking, on the plaintiff's side, limiting

15   the scope of the injunction to apply to the consumer judgments

16   that are held by the three named plaintiffs.

17          THE COURT:  All right.  So at the end of my --

18          Let me make sure I'm looking at the right ruling.  It

19   ends saying, "At the hearing on plaintiff's motion, the

20   plaintiff agreed that if the court were to grant plaintiff's

21   application, they would notify the sheriff of all counties in

22   New York.  Accordingly, plaintiffs are directed immediately to

23   provide notice of this order to all sheriffs of all 62 counties

24   in New York."

25          MR. GRUBE:  I understand.

1    It directs notice to the sheriffs, but it does not

2 bind the sheriffs, in our reading.

3    THE COURT:  Because the language says the sheriff

4 defendants are enjoined.

5    MR. GRUBE:  That's correct.  And they were the parties

6 before the court at the time.

7    THE COURT:  OK.

8    MR. GRUBE:  We didn't brief Rule 65(d) because we

9 didn't believe it was necessary.  But we don't believe that

10 they would satisfy the Rule 65(d) requirements.

11    THE COURT:  Do you know, have the sheriffs in other

12 counties been applying the statute retroactively?

13    MR. GRUBE:  This question might be better answered by

14 the counsel for the sheriffs' defendant.  My understanding --

15    THE COURT:  I think he's counsel for the named

16 sheriffs.

17    MR. GRUBE:  Right, named sheriffs.

18    MR. CASTELLANO:  I have no information with respect to

19 the sheriffs in the state that are not named in the lawsuit.

20    THE COURT:  I assumed that.

21    And you don't have any information?

22    MR. GRUBE:  I -- I don't have any concrete answers to

23 that question.

24    THE COURT:  OK.  What does that mean, no concrete

25 answers?

1          Do you have an inconcrete answer?

2          MR. GRUBE:  I think I have heard anecdotal reports

3   that --

4          THE COURT:  What have you heard?

5          MR. GRUBE:  I have heard anecdotal reports that the

6   other sheriffs are complying with the terms of the injunction,

7   applying the 9 percent rate for debts before the acts came into

8   force.

9          THE COURT:  Has your office sent out any kind of

10  memorandum or instruction to sheriffs with regard to the

11  ruling?

12         MR. GRUBE:  No.

13         THE COURT:  OK.  Have you had communications or

14  inquiries in which you gave advice, not you personally, but the

15  office?

16         MR. GRUBE:  No.  Not that I'm aware of, no.

17         THE COURT:  OK.  All right.  Go ahead.

18         MR. GRUBE:  OK.  I just want to just sort of walk

19  through, I think we hit a lot of this, but I just want to go

20  back to just sort of the exceptions for when a court may offer

21  relief to parties not before the court.

22         One is when it's necessary to vindicate a named

23  plaintiff's right.  I don't think plaintiff has argued that is

24  the case here.  This is not a case where there is, say, a

25  prison condition or something that by being changed to for the

1    benefit of a named plaintiff, that relief necessarily applies

2    to other putative class members as well.  This is a case where

3    the relief can be determined on an individual basis.

4               THE COURT:  You mean you think it's OK in New York

5    State for there to be different post-judgment statutory

6    interest rates depending on what county you're in or who the

7    plaintiff is?

8               MR. GRUBE:  It would depend on who the plaintiff is.

9               THE COURT:  You think that's OK?

10              MR. GRUBE:  Well, it has to do with the power of the

11   court.  And also in this very motion, plaintiffs argue, they

12   make the argument that putative class members are harmed.  They

13   didn't submit a single affidavit, any evidence from any

14   putative class members aside --

15              THE COURT:  Those are all the arguments in the

16   connection for a motion for a permanent injunction.  The

17   preliminary injunction is to preserve the status quo so that

18   people aren't injured by what I've found there is a likelihood

19   of successful showing is an unconstitutional taking and that

20   the injury won't occur in the interim until that issue can be

21   fully and finally litigated.

22              MR. GRUBE:  Well, the finding is as applied to the

23   named plaintiffs.

24              As for putative class members, we don't know if they

25   have the same sort of -- if they rely --

1          We don't know even for the plaintiffs if they have

2     written off this debt, what value they have placed on their

3     books.

4          THE COURT:  Let me ask you, have you taken any

5     discovery on this subject?

6          MR. GRUBE:  I'll defer to my colleague, Michael Berg,

7     who is handling discovery.  I understand that discovery has

8     commenced and the parties are working through it.

9          THE COURT:  Why don't you confer with your colleague

10    or let him speak to this.

11         MR. BERG:  Yes.

12         Your Honor, we served document requests and

13    interrogatories on July 14.  We have received objections and

14    responses from the sheriff defendants, and we are working

15    cooperatively with all parties to allow for a little additional

16    time for the other responses.

17         THE COURT:  You served these on the sheriff

18    defendants?

19         They are not the ones that have to show harm.  It's

20    the plaintiffs.

21         MR. BERG:  We served discovery on the plaintiffs as

22    well.

23         THE COURT:  OK.

24         MR. BERG:  The sheriff defendants have raised

25    questions about, for example, administrative feasibility, and

1    we wanted to get some information about that.

2            But the bulk of our efforts, of course, as your Honor

3    rightly points out, are directed to the plaintiffs.  You were

4    asking --

5            THE COURT:  You served those on July 14?

6            MR. BERG:  Yes, your Honor.

7            THE COURT:  And you were in before me on the --

8            Isn't discovery in this case supposed to be well

9    underway?

10           You are supposed to serve them by July 14.  OK.  All

11   right.

12           I'm sorry.  Go ahead.  You were telling me exceptions.

13           MR. GRUBE:  Right.  So the other line of cases on

14   which plaintiffs rely are cases where the governmental

15   defendant has acquiesced to apply relief on a classwide basis,

16   and those line of cases are not applicable here for the reasons

17   we have discussed.

18           First of all, it's privately enforceable by private

19   parties and also --

20           THE COURT:  I don't understand that.

21           You just told me that you have heard anecdotally that,

22   in fact, the other sheriffs are applying my injunction and are

23   adhering to the 9 percent rate that pertained before the

24   statute was enacted.

25           MR. GRUBE:  Right.  Sorry, I wasn't clear.

1     I was trying to make the point I was making before,

2 that the Attorney General can't acquiesce to apply relief on a

3 classwide basis because private debtors -- the Attorney General

4 doesn't control whether they seek to vindicate their rights

5 under the act.

6     And it's also the case in, for instance, in the

7 *Daniels* decision on which plaintiffs rely that the court denied

8 class -- granted class certification in that case -- I'm

9 sorry -- and said if it's unnecessary, come back with a

10 stipulation.

11     All of these cases do not involve the power of the

12 court's injunctive relief.  I'm talking about the *Galvin* line

13 of cases on which plaintiffs rely.  These cases involve whether

14 class certification is necessary or not, but they don't go to

15 the scope of relief.  So none of those cases apply here.

16     I think I've covered the primary points that I wanted

17 to, and I'm happy to answer more questions, or if you want me

18 to move on.

19     THE COURT:  Here is the biggest problem that I have,

20 and I sort of alluded to this before.  I mean, you made this

21 motion within days of the initial pretrial conference.  My

22 ruling, finding that there wasn't a facial challenge, there was

23 only an as-applied challenge was based on the arguments, based

24 in part on the arguments made by the Attorney General that you

25 needed discovery with respect to these plaintiffs and

1    plaintiff's arguments about decisions they had made and the

2    like in terms of the economic impact of the statute on them and

3    potentially on other class members.

4           So how can you say discovery hasn't been completed,

5    but they should have moved for class certification when you

6    moved within days of the initial pretrial conference?

7           MR. GRUBE:  Well --

8           THE COURT:  Why shouldn't I leave things as they are,

9    maintain the status quo, and talk to the plaintiffs about a

10   schedule for class certification motion practice?

11          MR. GRUBE:  Well, I don't even know if plaintiffs want

12   to file a class certification.

13          THE COURT:  I'm going to ask them.  Don't worry.

14          MR. GRUBE:  OK.

15          THE COURT:  I mean, what is the harm to you if that

16   were the outcome?

17          MR. GRUBE:  We don't think that is necessary because

18   it's a question of law here.  It's just a straightforward

19   question of law, and the scope of the court's equitable

20   power --

21          THE COURT:  No.  The question of law in terms of

22   entering a preliminary injunction does involve a balancing of

23   the equities.

24          MR. GRUBE:  That's true.

25          There is a balancing of the equities, but the equities

1  do not allow a court to issue an injunction to nonparties

2  outside of the parameters set forth in the exceptions that --

3        THE COURT:  You just said I didn't issue an injunction

4  to nonparties.  I didn't enjoin anybody, according to you,

5  other than the three named sheriffs.

6        MR. GRUBE:  Well, or for the benefit of classwide

7  relief.

8        THE COURT:  No.  You just told me one of the

9  exceptions is when other people's rights happen to get

10  vindicated because that is a natural consequence of the

11  injunctive relief.

12        MR. GRUBE:  No, necessary consequence.  When relief

13  cannot be drawn on narrower, that is -- I think it's the

14  *Citizens United* and that line of Supreme Court cases that we

15  cite -- that it cannot be drawn more narrowly to just protect

16  the parties before the court.

17        Here, relief can be drawn narrowly enough to protect

18  just the named plaintiffs by applying the preliminary

19  injunction to the consumer debt judgments that they hold, and

20  only those.

21        THE COURT:  All right.  Is there anything else you

22  want to talk to me about?

23        MR. GRUBE:  No.  Thank you, your Honor.  If you have

24  any questions later, I'm happy to come back up.

25        THE COURT:  All right.  Thank you.

1          Who wishes to be heard on behalf of the plaintiffs?

2          MS. WEST:  I do, your Honor.

3          So, your Honor, I would like to jump straight to the

4     class certification issue that your Honor was discussing with

5     Mr. Grube just before.

6          On the class certification issue, we would like to

7     just make clear, as we said in our papers, that we do not

8     believe class certification is in necessary in this case.

9          THE COURT:  What if I disagree with you?

10          Are you intending to move for class certification or

11     not?

12          MS. WEST:  At this time, your Honor, we do not believe

13     it is necessary because we think --

14          THE COURT:  Is that saying you do not intend to move?

15          MS. WEST:  We do -- so, at this point, no.

16          But if the Attorney General continues to say that the

17     court's preliminary injunction order should only apply to the

18     three named plaintiffs --

19          THE COURT:  They have said that.  They made a motion.

20     That is clearly their position.

21          I'm asking you, given that that is their position, is

22     it the plaintiff's intent, as you told me at the time you filed

23     this case and given that you filed this as a putative class

24     action, do you or do you not intend to move for class

25     certification?

1          MS. WEST:  Yes, your Honor, we do intend to move for

2     class certification.

3          THE COURT:  Contrary to what you just said?

4          MS. WEST:  We do not believe it is necessary, but

5     we -- is what I said -- but we do plan to move because the

6     Attorney General, first of all, has been inconsistent on this

7     point.

8          THE COURT:  But you're being somewhat inconsistent as

9     well.

10          MS. WEST:  Well, we are dealing with a similar

11     confusion, as your Honor is.

12          The Attorney General on the one hand is saying, not

13     only on the last pretrial conference with your Honor, that if

14     we prevail their statute is -- there is curtains for the

15     statute and there is, you know --

16          THE COURT:  Regardless of what counsel says, counsel's

17     argument doesn't determine the statute's enforceability.  And

18     you conceded in connection with the briefing of that motion

19     that you were not bringing a facial challenge, so I did not

20     rule that facially the statute is unconstitutional.

21          I ruled it was unconstitutional as applied to the

22     three named plaintiffs, and because you told me you were

23     bringing this on behalf of a putative class, I enjoined

24     enforcement of the statute across the board.

25          MS. WEST:  So, your Honor, we did bring this on behalf

1    of a putative class of all holders of unpaid consumer debt

2    judgments that were entered prior to the effective date of the

3    act.

4              THE COURT:  Right.

5              MS. WEST:  For that reason, and because of the relief

6    we were seeking in the complaint, which is a declaration that

7    the statute is unconstitutional, and an injunction to prevent

8    its enforcement, we do not believe there is a real distinction

9    here between our as-applied and a facial challenge because of

10   the class that we are bringing this action for, and because of

11   the reasons that we were seeking --

12             THE COURT:  So now are you being inconsistent and

13   walking back and trying to tell me you are prosecuting a facial

14   challenge?

15             MS. WEST:  I admit, your Honor, and will concede that

16   we were unclear -- We could have been clearer about this point.

17             THE COURT:  OK.  I don't think my opinion could have

18   been clearer.  I think I very plainly said a facial challenge

19   fails.

20             MS. WEST:  That's true, your Honor.  However --

21             THE COURT:  Well, that's the law of the case then.

22   That's where we are.

23             So given that I ruled only that you had a claim that,

24   as applied, this statute is unconstitutional, you need to be

25   clear on whose behalf are you making that challenge.

1          MS. WEST:  Understood, your Honor.

2          THE COURT:  I mean, how does the *Cane* case not require

3     me to rule in favor of the requested relief by the Attorney

4     General?

5          MS. WEST:  We think the *Cane* case is distinguishable

6     on a couple of grounds, as explained in our papers.  We think

7     that -- I mean, as I said before, we do not believe there is a

8     clear distinction in this case between as-applied and a facial

9     challenge.

10          THE COURT:  Well, you're wrong.

11          MS. WEST:  OK.  In the *Cane* case, the court said that

12     there was -- there were particular factual circumstances at

13     issue in the *Cane* case.

14          THE COURT:  Right.

15          MS. WEST:  There were school teachers and

16     administrators saying we don't -- this accommodation, religious

17     accommodation procedure is unconstitutional because we have

18     these particular religious beliefs, and the court is going to

19     have to assess that compared to other folks who may have

20     different religious beliefs --

21          THE COURT:  Right.

22          And you told me the statute was unconstitutional

23     because you relied on the interests that had been accruing in

24     some cases for many, many years, and that your plaintiffs

25     relied on that accrued interest in making forward-looking

1    investment decisions.

2            MS. WEST:  So I would say that is only one piece of

3    the claim, your Honor.

4            THE COURT:  Correct.

5            MS. WEST:  I mean, we did make the argument that the

6    particular named plaintiffs made particular investment

7    decisions and decisions about loan criteria and acceptable

8    credit risk as part of their investment-backed expectations.

9            However, the whole class would also have reasonable

10   investment backed expectations.

11           THE COURT:  How do you know that?

12           MS. WEST:  Because to us it is an obvious point.

13   These are money judgments for a consumer debt, and any holder

14   of such a consumer debt judgment would have had to take certain

15   steps to secure that judgment.  Any holder of a consumer

16   judgment that was entered prior to the effective date of the

17   act would have necessarily had a reasonable expectation that

18   the legislature would not have changed the law to make the

19   interest rate lower, which it had never done before, and make

20   that, on top of that, retroactive.

21           THE COURT:  You're not challenging the authority of

22   the legislature --

23           MS. WEST:  Certainly not.

24           THE COURT:  -- to change the interest rate, are you?

25           Although I will note for the record that ironically

1   the interest rates have now continued to climb and are now

2   closer to what the interest rate had been than what it now is.

3   But that's really not within my province to opine one way or

4   another.

5           MS. WEST:  No.  And we do not believe -- that is not

6   the issue in this case, though.

7           THE COURT:  OK.

8           MS. WEST:  The issue in this case is not whether the

9   legislature had the authority to do this --

10          THE COURT:  OK.

11          MS. WEST:  -- or not.

12          Of course it could.  The point I simply wish to make,

13  your Honor, is that any a unpaid consumer debt --

14          Any holder of a consumer debt judgment that was

15  entered before the effective date of the act would necessarily

16  have an investment-backed expectation.

17          THE COURT:  If that's true, why have nobody other than

18  the three named plaintiffs here brought any kind of a challenge

19  to this statute?

20          MS. WEST:  Well, your Honor, enjoined the retroactive

21  effect of the statute before it could go into effect.  So I

22  cannot speak necessarily for every single person that has --

23          THE COURT:  Isn't that what you're asking to do by

24  bringing this as a putative class action, you are asking to

25  speak on behalf of all consumer creditors?

1          MS. WEST:  Yes, that is true.

2          I simply am saying I cannot speculate as to why each

3   individual creditor would not -- would necessarily have not

4   brought their own separate action to challenge the statute.

5          What I --

6          THE COURT:  How can you then speculate that they, just

7   like the named plaintiffs here, would have had the same

8   economic considerations?

9          MS. WEST:  Because, first of all, as far as the

10  investment-backed expectations, they may not have the same

11  actual amounts of the judgments, they may not have invested the

12  same amount of money, but they would have had an investment-

13  backed expectation.

14         THE COURT:  They might have written the judgments off.

15         Some of your judgments are dozens of years old, aren't

16  they?

17         MS. WEST:  From an accounting perspective, sure.

18  Judgment creditors may have written off a judgment.

19         THE COURT:  Right.

20         MS. WEST:  That doesn't mean that they don't have an

21  investment-backed expectation in the accrued interest on the

22  judgment.

23         THE COURT:  How does it not if you write off a debt?

24         That's basically acknowledging you're not going to

25  collect on it, isn't it?

1          MS. WEST:  If they are still seeking to collect on the

2     judgment, I believe, your Honor.  I mean, I can't speak for

3     every way that accounting -- each creditor might do accounting.

4     But I would say that, you know, if the creditor is seeking to

5     collect on the judgment, even if they've written it off as a

6     non-earning asset, for example, they still have an investment-

7     backed expectation in the accrued interest.

8          THE COURT:  All right.  Look, I want to take you back

9     to where we were a few minutes ago.  I am really struggling

10    with how, in light of the decision in *Cane*, you can maintain

11    the position that you're maintaining here when you have told me

12    somewhat inconsistently you may move, you may not move, for

13    class certification.

14         MS. WEST:  Your Honor, we will move for class

15    certification.

16         THE COURT:  When?

17         MS. WEST:  We do not have a specific timeline.  At

18    this point, we are not sure.

19         Excuse me.  Let me start over.

20         We were not sure as to when we were going to move for

21    class certification in part because of the inconsistent

22    positions of the Attorney General has taken as to whether they

23    view class certification is necessary or not necessary.

24         THE COURT:  You're the plaintiff here.  It's

25    irrelevant what the Attorney General thinks.

1          MS. WEST:  But in addition to that, your Honor, under

2     the *Galvin* line of cases that we cited in our papers, we also

3     did not believe it was necessary.  So we've been in no

4     particular rush to move for class certification because, again,

5     if your Honor declares the statute unconstitutional and enters

6     the declaration that we're asking for, then that's --

7          THE COURT:  What are you asking?

8          You already got the relief you asked for.  You're not

9     asking for anything here.  You moved, I ruled, I granted a

10    preliminary injunction that applies, as stated in the opinion,

11    and now the Attorney General has moved asking me to modify it

12    and make it clear that it applies only with respect to the

13    three --

14         Are there three named plaintiffs?

15         MS. WEST:  It is true that we are not asking for any

16    particular relief on this motion.  However, in the case,

17    ultimately we are going to ask your Honor to enter a permanent

18    injunction and a declaration that the statute is

19    unconstitutional.  If we --

20         THE COURT:  As applied?

21         MS. WEST:  As applied as to any holder of an unpaid

22    consumer debt judgment that was entered before the effective

23    date of the act, which again goes back to what I was saying

24    earlier, your Honor.  The distinction between as-applied and

25    facial in this particular case really is one without a

1    difference because of that.

2            In addition, I would say that your Honor's reasoning

3    on the motion to dismiss order further supports the idea that

4    statewide relief is appropriate in this case and would be

5    appropriate for the class.

6            The issue of investment-backed --

7            THE COURT:  I'm sorry.  You have to slow down because

8    I'm really -- I feel sorry for our court reporter, and I'm

9    having trouble digesting what you're saying to me.

10           MS. WEST:  I apologize.

11           THE COURT:  All right.  So I still am at a loss.

12           If you're saying everybody who is similarly situated

13   to your client would have the same expectations, why are you

14   not bringing on now the motion for class certification?

15           MS. WEST:  Your Honor, in light of what you're saying

16   today, we will do so expeditiously.

17           THE COURT:  OK.

18           MS. WEST:  Again, we have not done so before because

19   we did not -- we do not and did not believe that it should be

20   necessary in this case given the preliminary injunction that

21   was entered, which is statewide, and given the ultimate relief

22   we are seeking in the case at the end of the day, which is a

23   permanent injunction and a statewide declaration.

24           THE COURT:  Look --

25           MS. WEST:  In addition --

1          THE COURT:  -- I'm not saying anything about how you

2   have to litigate your case other than it's not going to drag on

3   forever.  Discovery is supposed to close, I believe, in

4   December under the terms of the case management plan, and you

5   brought this case --

6          MS. WEST:  Um-hmm.

7          THE COURT:  -- on behalf of a putative class.  So you

8   either have to move or you have to drop your class claims, one

9   or the other.

10          MS. WEST:  We understood, your Honor, and we are not

11   dropping our class claims.  We simply until this time not moved

12   also because we want to be expeditious in this case and

13   efficient for the court.

14          I mean, as I said before, the Attorney General has

15   said multiple times before that they also do not believe class

16   certification is necessary.  We have a preliminary injunction

17   that is statewide and in place protecting the class.

18          And in addition --

19          THE COURT:  Now you have a motion to modify that.

20          MS. WEST:  Yes, and if your Honor --

21          THE COURT:  So you need to go back to the *Cane*

22   question I asked you earlier.  In light of the Second Circuit's

23   ruling in *Cane*, how do I not grant the relief that's being

24   requested?

25          MS. WEST:  Because the distinction between an

1    as-applied and facial challenge in that case was a clear one.

2    There were specific individuals that were seeking religious

3    accommodations, and they were saying that the accommodation

4    procedure, as applied to them, was unconstitutional.

5           They had -- there was specific situations and facts

6    for the court to consider in that case.

7           THE COURT:  And you're telling me there are no facts

8    that would distinguish your clients from the other putative

9    class members?

10          MS. WEST:  Not necessarily.  However, we do not

11   think -- we don't think there are many -- there should be many

12   facts that should matter.  I mean, in light of -- especially in

13   light of your Honor's ruling on the motion to dismiss.

14          In the motion to dismiss order, your Honor not only

15   found that we plausibly stated a claim as to the second factor

16   of *Penn Central*, your Honor, as you will recall, also found

17   that we -- the character of the government action and other

18   unique circumstances present in this case showed that we had

19   stated a claim that there would be a taking, in part, because

20   of the arguments that we were making in support of a per se

21   taking --

22          THE COURT:  Which I rejected.

23          MS. WEST:  Which you did reject.  That's true.

24          THE COURT:  And I said I need to apply the *Penn*

25   *Central* factors, the second one of which evaluates the extent

1  to which the regulation interferes with reasonable investment-

2  backed expectations on which the parties told me there needed

3  to be discovery.

4          But I found that you had made at least a sufficient

5  showing of a likelihood of success that I would maintain the

6  status quo while you litigated your claims.

7          MS. WEST:  That is true.

8          However, the third factor was the one that your Honor

9  said weighed most heavily in support of finding that there

10  would likely be a taking, because we presented the rare case in

11  which government interference with property represented a

12  physical invasion.

13          Essentially your Honor pointed to the *Brown* case --

14          THE COURT:  No.  I said it wasn't a physical invasion,

15  it might be akin to a physical invasion.

16          MS. WEST:  Yes, because the interest that has already

17  been accrued and which is owed to the plaintiffs was reduced by

18  operation of law.

19          Your Honor also pointed to other unique circumstances

20  that --

21          THE COURT:  Counsel, I don't mean to interrupt you,

22  but it's not helpful to me, in trying to determine how to rule

23  on the Attorney General's motion, for you to just keep reading

24  to me from what I previously ruled on prior motion practice.

25          You need to talk about the motion that's presently

1   before me.

2           MS. WEST:  Let me just --

3           THE COURT:  Let me finish.

4           I asked you several times, how do I not grant the

5   relief the Attorney General is seeking in light of what the

6   Second Circuit has said in *Cane*?

7           And you really have never -- I guess your answer is

8   that all the plaintiffs are similarly situated and, unlike in

9   *Cane*, the facts don't matter.

10          Is that a fair summary of your position?

11          MS. WEST:  Yes, the plaintiffs are similarly situated.

12          THE COURT:  OK.

13          MS. WEST:  In addition to that, your Honor, if your

14  Honor grants the Attorney General's motion, we'll just be right

15  back to where we started.  We'll move immediately for class

16  certification, and we will seek to re-expand the preliminary

17  injunction order to apply statewide to all of the class

18  members, which is every person that's going to be -- who holds

19  a judgment --

20          THE COURT:  And I might well deny it because you've

21  sat on your rights, so threatening the court with future motion

22  practice really is not a very persuasive argument.

23          MS. WEST:  I'm not trying to threaten the court, your

24  Honor.  I'm simply saying that granting the Attorney General's

25  motion at this stage is not going to get us any closer to going

1  straight to the merits of this case.

2           THE COURT:  What are the merits of the case?

3           That's what I'm trying to get at.  What have you done

4  to advance the merits of the case and what needs to be done?

5           MS. WEST:  Your Honor --

6           THE COURT:  Based on your argument, you could move

7  right now for a permanent injunction because you say all the

8  plaintiffs are similarly situated and the facts don't matter.

9           MS. WEST:  Well, we'll have to engage in discovery in

10  this case, your Honor.  The Attorney General has served us with

11  over 50 requests for production.

12           THE COURT:  Have you served discovery?

13           MS. WEST:  Yes, we served discovery on the Attorney

14  General and all three sheriffs.

15           THE COURT:  And if facts don't matter, why are you

16  serving discovery?

17           MS. WEST:  We are simply looking to establish, your

18  Honor, certain information that we believe the sheriffs and the

19  Attorney General might have about the amendment to the law and

20  how it's going to be implemented.

21           I can't say every single request that we asked for off

22  the top of my head, but we are also seeking information about

23  how the sheriffs are going to enforce the law.  We're also

24  seeking information from the Attorney General about the law and

25  how it's going to be enforced if we --

1          Yeah.  While we do not believe a lot of discovery is

2     necessary in this case, we have also been served numerous

3     discovery requests that we think are asking for a lot of

4     information that probably isn't necessary in this case, and we

5     are going to have to sort through that.

6          The discovery issue is not before your Honor.  I'm

7     simply saying that's why we haven't moved for summary judgment

8     right now.

9          THE COURT:  OK.

10          MS. WEST:  I mean, I would like to just briefly

11     address the standard on this motion which you and Mr. Grube

12     were discussing earlier.

13          Mr. Grube said that, you know, the court has the same

14     discretion as it had before.

15          THE COURT:  Let me ask you, what do you say the

16     standard is?

17          As I understood from your briefing, it was that there

18     has to be a change in circumstances.

19          Is that your position?

20          MS. WEST:  Yes.

21          THE COURT:  How do you deal with what I think is

22     pretty clear case law that says that applies in the context of

23     a permanent injunction, but not a preliminary injunction?

24          MS. WEST:  I disagree, your Honor, that the case law

25     is clear on that point.

1          The *Sierra Club* decision specifically said yes, that

2     changed circumstances applies to permanent injunctions.

3     However, it is the rule of this court, other courts --

4          THE COURT:  I'm not bound by what any other district

5     court judge says, am I?

6          MS. WEST:  No, you are not.  They are persuasive.

7          THE COURT:  They may be persuasive.  They may not be.

8          MS. WEST:  They may be persuasive.

9          However, it is clear that the courts in those

10    decisions have cited *Sierra Club* for the idea that they have

11    discretion on a motion to modify and yet have continued on to

12    apply the changed circumstances standard.

13         THE COURT:  OK.  If you're correct and the standard

14    is changed circumstances, it seems to be pretty clear,

15    particularly based on the arguments that you yourself have

16    made, that my ruling on the motion to dismiss which I made it

17    very clear you had an as-applied challenge, but not a facial

18    challenge and I dismissed your due process claims and I

19    rejected your other takings claims, constitutes a change in

20    circumstances.

21         Does it not?

22         MS. WEST:  No, your Honor.

23         The court's ruling on the motion to dismiss found we

24    plausibly stated a regulatory takings claim.  It's the same

25    claim that supported the entry of the preliminary injunction in

1   the first place.  The fact that your Honor said that we stated

2   an as-applied claim does not, in our view, materially change

3   the circumstances because of the relief that we are seeking,

4   which is statewide, and because we brought it on behalf of a

5   putative class of judgment holders.

6           THE COURT:  Is the fact that you brought it on behalf

7   of the putative class the determinative factor in your mind?

8           MS. WEST:  On this particular motion?

9           THE COURT:  Yes.

10          MS. WEST:  I think it's a key factor.  I wouldn't say

11  it's the only determinative factor.  Again --

12          THE COURT:  If it's a key factor, how do you reconcile

13  that with having started out your argument by telling me you

14  don't need to move for class certification.

15          MS. WEST:  Because, your Honor, we --

16          Sorry.  Can you restate that, please?

17          How do I reconcile it with saying that we don't need

18  class certification?

19          THE COURT:  Yes.

20          MS. WEST:  Because, your Honor, again, as we said in

21  our papers, we do not think in this particular case there is a

22  clear distinction between our as-applied and our facial

23  challenge.  However, we will --

24          THE COURT:  Can you explain that to me a little more

25  fully?

1      I really don't understand what you mean by that,

2  saying there is not a distinction.

3      MS. WEST:  The class that we've defined is the only

4  class -- the class singled out by the amendment.  It is holders

5  of unpaid consumer debt judgments that were entered before the

6  effective date.

7      If the court agrees with us that the statute is

8  unconstitutional as applied to -- excuse me -- if the court

9  agrees with us that the statute is unconstitutional and as a

10  statewide matter, then --

11      THE COURT:  As applied, because that's all I've said

12  you have remaining.

13      MS. WEST:  Then we -- then we do not --

14      OK.

15      THE COURT:  If you get a class certified and the

16  plaintiffs are everybody who held a judgment and the statute

17  applies retroactively to everybody who held a judgment, then I

18  suppose you may be right that there is not a lot of distinction

19  between a facial challenge to the retroactive application and

20  an as-applied challenge with respect to the plaintiffs.

21      But that presumes that you move for class

22  certification and that I certify a class of all judgment

23  creditors, doesn't it?

24      MS. WEST:  I would say, in addition to that, your

25  Honor, that is --

1       THE COURT:  You didn't.

2       Go ahead.  That is true, right?

3       MS. WEST:  Yes.

4       THE COURT:  Yes.  OK.

5       MS. WEST:  The amendment, however, we believe is also

6  unconstitutional and the only circumstances in which it

7  applies, which is retroactively to holders of consumer debt

8  judgments entered before the effective date, we have

9  consistently advanced that position by the statewide injunction

10 in the first place.

11      THE COURT:  Which you didn't get.

12      MS. WEST:  Which we obtained through defining a class

13 of all holders of the consumer debt judgments.  I don't need to

14 say it again.  And by arguing that we and the proposed class

15 had stated a claim.

16      And particularly given what your Honor is saying

17 today, we will move for class certification.

18      THE COURT:  All right.  Is there anything else you

19 want to tell me?

20      MS. WEST:  Just that, your Honor, as far as the

21 changed circumstances standard, we believe it does apply in

22 this case.  The Second Circuit has not expressly addressed this

23 issue and other courts in this district have applied it.  We

24 don't believe there have been any changed circumstances.  The

25 same reasoning supporting the preliminary injunction is the

1  same that your Honor gave supporting the preliminary injunction

2  is also the same reasoning supporting the motion to dismiss.

3  The other reasons that the Attorney General have identified in

4  their papers, that there have been changed circumstances, don't

5  apply.  Their late arrival to the case was of their own doing.

6      THE COURT:  No, it was of your doing.  You didn't name

7  them.

8      MS. WEST:  But we did serve them with the papers.

9  They appeared at the hearing.  They had notice of the action

10  and they could have sought to intervene at that time.

11      THE COURT:  It's not the burden of a party to

12  intervene.  It's your burden to sue whomever you are seeking to

13  be bound.

14      MS. WEST:  But the Attorney General could have

15  intervened and sought to oppose the preliminary injunction that

16  we were seeking at that time.

17      Turning back to the equities, your Honor, I mean, we

18  think that it makes the most sense to maintain the status quo

19  for the reasons that you identified earlier with Mr. Grube.

20  The status quo is now in place.  It's the same status quo that

21  has been in place since 1981, and it would cause all kind of

22  administrative confusion if the court were to undo the

23  injunction that it entered before, only to have us ask for the

24  same relief later.  If we prevail, the sheriffs will then --

25  the sheriffs will have to recalculate all the judgment interest

1    rates.

2              THE COURT:  Well, you don't really have standing to

3    argue administrative burden.

4              MS. WEST:  Well, as to the sheriffs, you mean?

5              THE COURT:  There is no administrative burden on you.

6              MS. WEST:  No.

7              But as a matter of public interest and the delays that

8    the sheriffs have identified in their papers --

9              THE COURT:  Well, I'll give the sheriffs the

10   opportunity to be heard.  You don't have standing to make their

11   arguments.

12             MS. WEST:  OK.  Well, does your Honor have any

13   additional questions for me?

14             THE COURT:  I do not.  All right, counsel.

15             Do you wish to be heard?

16             MR. CASTELLANO:  Your Honor, I don't have much more to

17   add than what's already been stated in our papers.

18             THE COURT:  What's your position here?

19             MR. CASTELLANO:  Our position is that the modification

20   as requested by the Attorney General should be denied.

21             My clients, the sheriffs, would suffer administrative

22   burden, there would be delays in the enforcement of judgments,

23   there would be confusion if we were to go back and

24   retroactively reduce the interest rates based on specific

25   creditors.

1          THE COURT:  Let me ask you, have the sheriffs actually

2     had to join issue on this enforcement question?

3          In other words, have people come to you and tried to

4     enforce judgments and have the reduced rate applied

5     retroactively?

6          MR. CASTELLANO:  I don't know, your Honor.

7          THE COURT:  Have you given notice to the sheriffs in

8     the other counties?

9          MR. CASTELLANO:  I am not aware whether we did that.

10          THE COURT:  You were directed to do it.

11          MR. CASTELLANO:  My client was, your Honor?

12          My client --

13          THE COURT:  I'm not sure whether I directed you to do

14     it or whether I directed the plaintiffs to do it.

15          You don't know?

16          MR. CASTELLANO:  I don't recall at this moment.  I

17     believe it was the plaintiffs, perhaps, that were directed to

18     provide that notice.

19          THE COURT:  Yes, plaintiffs should notify the

20     sheriffs.

21          Yes.  OK.

22          MR. CASTELLANO:  I'm not sure whether we did it

23     independently of the order, but I'm happy to check.

24          THE COURT:  All right.  Does the AG wish to be heard

25     further?

1    MR. GRUBE:  I think your Honor understands our

2  arguments.  I don't want to belabor it.

3        THE COURT:  Come to the podium, please.

4        I do have a question for you, actually.

5        MR. GRUBE:  OK.

6        THE COURT:  But you can go ahead first.

7        MR. GRUBE:  OK.  I just had a couple minor points that

8  I wanted to touch, which is just the question of whether this

9  motion should be deferred while class certification motion is

10  filed, and we don't think it should be.  We think it can be

11  resolved and plaintiffs have had, you know, the opportunity

12  since April of last year, and the other cases the parties

13  typically move for class cert with a preliminary injunction.

14        THE COURT:  Well, sometimes yes and sometimes no.  And

15  it was your side that said you needed discovery.  So if they

16  are going to have to refute your challenge to typicality and

17  numerosity and the other factors for class certification, isn't

18  there an economy and an efficiency in allowing discovery to

19  happen first?

20        MR. GRUBE:  In our motion to dismiss, we were asking

21  for dismissal, we were not asking for discovery.  We didn't

22  want the case to go forward.

23        THE COURT:  But you complained that you didn't have

24  information about one of the factors.

25        MR. GRUBE:  Right.

1          And that plaintiffs have not alleged information about

2    that factor.  Your Honor disagreed with us.

3          THE COURT:  I did.

4          MR. GRUBE:  And we're not re-litigating that here, but

5    yes, they have a burden to come up with competent evidence on

6    that.  That's a merits question.  I suppose it also overlaps

7    with class cert, to a certain extent.  But anyway, our point is

8    just that we believe the motion is ripe to be adjudicated.

9          As for the delays, as for the claims of administrative

10   chaos, we haven't seen any concrete evidence about that.  We

11   have seen conclusory allegations.  But we understand that

12   different rates are being used, and we don't understand

13   necessarily why that can't be accommodated.

14         Then --

15         THE COURT:  That's not what you told me earlier.  You

16   told me you heard anecdotally that the sheriffs in the other

17   counties were sticking to the 9 percent rate, didn't you?

18         MR. GRUBE:  I'm talking about the response.  The

19   arguments raised in the sheriffs' declaration.

20         THE COURT:  The chaos that would be caused if I were

21   to modify?

22         MR. GRUBE:  Yes.

23         THE COURT:  I'm sorry.  I understand.

24         MR. GRUBE:  Yes.

25         And just my final point, I want to make in response to

1   your Honor's questions about maintaining the status quo is that

2   the court's powers are related to the claims that are brought

3   before it, and plaintiffs have chosen to bring a claim that

4   they abandoned their facial claim and so --

5               THE COURT:  But do you not concede the point that I

6   kind of re-articulated when I was talking with plaintiffs'

7   counsel, that if they move for class certification and the

8   class that they have denominated, in fact, gets certified, that

9   class being all holders of judgment entered before the date of

10  the statute, then there really is no distinction at all between

11  an as-applied and a facial challenge to the retroactive

12  application of the statute.

13              MR. GRUBE:  Right.  It would depend on the definition

14  of the class.

15              THE COURT:  Yes, that's what I'm saying.

16              MR. GRUBE:  The definition of the class may not result

17  in the facial invalidity.

18              THE COURT:  But the class as defined in the claim.

19              MR. GRUBE:  As defined in the claim.

20              THE COURT:  Then you agree it would, in fact, be the

21  same.

22              MR. GRUBE:  Right.  That would, in fact, be a facial

23  claim and would fail for the reasons.

24              THE COURT:  I'm not going to the merits, but I think

25  that was the point that counsel for the plaintiffs was making

1    to me.

2            MR. GRUBE:  Right.  I think that is what *Cane* also

3    says, is that there shouldn't be an end run around class

4    certification.  If you want classwide relief, then you need to

5    file a class certification motion and bring the putative class

6    before the court within the court's powers to bind the class

7    members.

8            THE COURT:  But I think in *Cane* the court said you

9    didn't even purport --

10           MR. GRUBE:  Right.

11           THE COURT:  -- to proceed on behalf of a class, right?

12           MR. GRUBE:  Right.

13           But I'm talking more about its general rationale as to

14   the relation between Rule 23 and the court's powers to issue a

15   preliminary injunction.

16           THE COURT:  So the question I have, I said to you that

17   I had for you, is this.

18           MR. GRUBE:  Yes.

19           THE COURT:  If plaintiff is right and the test that I

20   should apply is a changed circumstance test, you told me you

21   would prevail either way.

22           MR. GRUBE:  Yes, and --

23           THE COURT:  Explain that to me again.

24           MR. GRUBE:  That is because until the motion to

25   dismiss ruling, that was a changed circumstance --

1          THE COURT:  The motion to dismiss ruling came before,

2   didn't it?

3          No.  I'm sorry.

4          MR. GRUBE:  That was in March.

5          THE COURT:  I understand what you're saying.

6          MR. GRUBE:  Yes.

7          THE COURT:  OK.  So the change in circumstance is

8   you're saying the ruling on the motion to dismiss?

9          MR. GRUBE:  Right, which addressed the Attorney

10  General's merits arguments.  Then the Attorney General

11  understood the scope of the claims that were going forward, and

12  this motion.

13         THE COURT:  I understand.  Thank you.

14         MR. GRUBE:  Thank you, your Honor.

15         THE COURT:  All right.  Thank you all very much.  I

16  will get a ruling to you as quickly as I can.  I appreciate

17  everyone's efforts on this.

18         Thank you very much to our court reporter.

19         (Adjourned)

20

21

22

23

24

25